UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAMIRRA RENELIQUE<br>PO Box 1291<br>Mt. Laurel, NJ 08054<br><br>   Plaintiff,<br><br>v.<br><br>AARON'S, INC.<br>6535 N. Crescent Blvd.<br>Pennsauken, NJ 08110<br><br>   Defendant. | CIVIL ACTION<br><br>CASE NO.: _____<br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Shamirra Renelique, (*hereinafter* referred to as "Plaintiff" unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that she was unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under the laws of the United States. This Court has

supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey for this action.

5. Plaintiff is proceeding herein under Title VII and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Aaron's, Inc. (*hereinafter* "Defendant"), is a Georgia-incorporated lease-to-own company, headquartered in Atlanta, Georgia, with store locations across the United

States, including at the address as set forth in the above-caption (the location at which Plaintiff worked).

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is an African-American female.

12. In or about August of 2014, Plaintiff was hired by Defendant as a Customer Service Representative at Defendant's Lindenwold, New Jersey location (*hereinafter* "Lindenwold location").

13. Throughout the time of her employment for Defendant, Plaintiff was a dedicated and hard-working employee who performed her job well.

14. In or about the fall of 2015, Defendant transferred Plaintiff to its Pennsauken, New Jersey location (*hereinafter* "Pennsauken location").

15. During Plaintiff's employment, she worked under Regional Manager Eric Robb (Caucasian) (*hereinafter* "Robb").[1]

16. Towards the end of her employment for Defendant, Plaintiff experienced racial hostility and animosity from Robb; for example:

---

[1] Although Robb was Regional Manager over Defendant's Lindenwold location, Robb frequented the Pennsauken location more often while Plaintiff was employed there; upon information and belief this was due (at least in part) to Robb demoting and/or terminating the General Manager of the Pennsauken location in or about December of 2015, shortly before Plaintiff's termination (described further *infra*).

3

   a. Robb made comments towards Plaintiff (as well as her African-American and other non-Caucasian coworkers) about being uneducated, inferring that minorities are uneducated ;

   b. Robb repeatedly told Plaintiff a "monkey" could do her job (which Plaintiff took to be a comment about her race);

   c. Shortly before closing one day, Plaintiff was talking with her coworkers when Robb approached and told Plaintiff to "shut your f**king mouth;"

   d. Plaintiff heard Robb use the term "nigger" in the workplace, including when referring to other African-American employees of Defendant (although not specifically towards Plaintiff *until* right before her termination, described further *infra*).

17. In or about December of 2015, Plaintiff specifically complained about the racial behavior exhibited by Robb to Sales Manager, Jesus Reyes[2] (*hereinafter* "Reyes"); Plaintiff also reported Robb's aforesaid hostility and animosity to Defendant's Human Resource hotline.

18. On or about December 31, 2015, Plaintiff inquired to her Sales Manager, Reyes, if she could either take a long lunch or leave early that day (in order to renew her car registration); Reyes told Plaintiff she could leave early that day.

19. On or about December 31, 2015, despite receiving permission to leave early (described *supra*):

   a. Shortly before leaving early at 2 p.m. (as told she could by Reyes), Plaintiff was informed that Robb said Plaintiff could no longer leave early;

---

[2] Plaintiff heard Robb make racial comments to Manager Reyes (upon information and belief, Hispanic) such as Robb telling Reyes to speak "fake Spanish."

4

    b. When Plaintiff inquired to Robb as to why Plaintiff was now being told she could not leave early when Reyes had told Plaintiff she could, Robb erupted at Plaintiff, telling her:

        i. "You people" are all the same;

        ii. Plaintiff was "always doing that nigger sh*t"; and

        iii. When Plaintiff came back a monkey would be doing her job.

    c. Robb's demeaning and racist hostility towards Plaintiff was conducted in front of other employees as well as within hearing of Defendant's customers;

    d. Plaintiff told Robb that she would not be spoken to in the aforesaid manner (specifically objecting to Robb's referral to Plaintiff as a "nigger" and "monkey") and Plaintiff left, as she was given permission to do by Reyes.

20. On or about December 31, 2015, shortly after being harassed by Robb (described *supra*), Plaintiff called Defendant's Human Resource hotline to report and specifically complain about Robb's racist remarks (described *supra*).

21. On or about January 2, 2016, Plaintiff's next scheduled day to work,[3] Plaintiff reported to her work location and was asked by Robb "what the f***" Plaintiff was doing there, because Robb "f**king fired" her, purportedly because Plaintiff "abandoned" her job by leaving on December 31, 2015 (after Robb's racist remarks and Plaintiff complaining about same, described *supra*).

22. Defendant's contention[4] that Plaintiff was terminated for "job abandonment" is complete pretext for discrimination/retaliation, as:

---

[3] Upon information and belief, Defendant was not open January 1, 2016 (New Year's Day).
[4] In Defendant's Position Statement submitted to the EEOC (also known as an Answer) in conjunction with this matter, Defendant reiterates that Plaintiff was terminated for "job abandonment."

5

a. Plaintiff had been *given permission* to leave early that day, and then returned to work her next scheduled day;

b. In Plaintiff's over year of employment with Defendant, she had no prior issues regarding alleged job abandonment and had not received any substantial discipline from Defendant (regarding job abandonment or otherwise);[5]

c. After Robb made openly racist comments towards Plaintiff (described *supra*), Plaintiff complained to Robb, left, and reported Robb to Defendant's hotline;

d. As a result of Defendant's internal investigation spurred by *Plaintiff's* aforesaid hotline complaint:[6]

   i. Robb was purportedly terminated (in or about March of 2016) for violent threats made towards Defendant's own investigator (Senior Manager Associate Resources Jill Reinert), showing Robb's clear retaliatory animus;

   ii. Other employees of Defendant admitted that Robb had used inappropriate language in the workplace;

   iii. The former General Manager (African-American) removed by Robb from Defendant's Pennsauken location (but still employed by Defendant) admitted to Robb saying "nigger" in the workplace, as well as Robb using various expletives;

   iv. To the extent Defendant contends Plaintiff was not initially terminated but suspended pending investigation, Plaintiff was not told of the results of the investigation nor offered her job back in connection with same.

---

[5] To the contrary, during her employment, Plaintiff had received a favorable performance review from Defendant and a raise.
[6] According to Defendant's Position Statement to the EEOC.

23. Plaintiff therefore believes and avers that she was subjected to a hostile work environment and pretextually terminated (or suspended and subsequently terminated) because of her race and/or for opposing/complaining of racial discrimination.

**Count I**
**Violations of 42 U.S.C. § 1981 ("Section 1981")**
**([1] Race Discrimination [2] Retaliation [3] Hostile Work Environment)**

24. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

25. During her employment with Defendant, Plaintiff was subjected to severe and pervasive hostile racist remarks from Defendant's management (including but not limited to Robb), described further *supra*.

26. Shortly before her termination, Plaintiff specifically complained to Defendant's management (Reyes and Robb) and Defendant's hotline regarding the hostility and racist remarks of Robb.

27. After being subjected to racist remarks by Robb ("nigger," "monkey") and specifically opposing/complaining of same, Plaintiff was almost immediately thereafter pretextually terminated for "job abandonment."

28. Plaintiff therefore believes and avers that she was subjected to a hostile work environment and pretextually terminated (or suspended and subsequently terminated): (1) because of her race and/or (2) because she opposed/complained of racial discrimination.

29. These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

## Count II
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination [2] Retaliation [3] Hostile Work Environment)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute unlawful discrimination and retaliation under Title VII.

32. Therefore Plaintiff believes and avers she was subjected to a hostile work environment and pretextually terminated (or suspended and subsequently terminated), in violation of Title VII: (1) because of her race and/or (2) because she opposed/complained of unlawful discrimination.

## Count III
## New Jersey Law Against Discrimination (NJ LAD)
### ([1] Race Discrimination [2] Retaliation [3] Hostile Work Environment)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. Plaintiff reasserts each and every allegation from Count I and II, as such actions in this case constitute identical violations of the NJ LAD.

35. Therefore Plaintiff believes and avers she was subjected to a hostile work environment and pretextually terminated (or suspended and subsequently terminated), in violation of the NJ LAD: (1) because of her race and/or (2) because she opposed/complained of unlawful discrimination.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square
Suit 128
Bensalem, PA 19020
(215) 639-0801

Dated: November 11, 2016